```
        IN THE UNITED STATES DISTRICT COURT FOR THE
              SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

KEVIN McCARTY, #120526,            :

    Plaintiff,                 :

vs.                                :   CIVIL ACTION 07-0039-WS-M

PRISON HEALTH SERVICES, et al.,    :

    Defendants.                :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis,* filed an action under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Plaintiff's Motion for Emergency Injunction Relief (hereinafter "Motion") (Doc. 59). For the reasons stated below, it is recommended Plaintiff's Motion be denied.

I. Plaintiff's Motion (Doc. 59) and Proceedings.

In the Motion Plaintiff seeks an order directing Defendants Prison Health Services ("PHS") and Dr. McQueen, PHS's director, to approve the use of Soma, a muscle relaxant, for Plaintiff. Soma was ordered by Plaintiff's treating doctor at Fountain Correctional Center ("Fountain"), Defendant Dr. Barnes. Plaintiff alleges that on August 23, 2007, Dr. Barnes ordered Plaintiff to take Soma, 350 m.g., three times a day, for cramps and pain associated with Plaintiff's surgery on his right ankle.

Having taken this non-narcotic medication before and finding it effective, Plaintiff states that he agreed to take it again instead of taking the narcotic Vicodin for pain.  By taking Soma, Plaintiff would also be able to live in population, as he has been in segregation during most of his incarceration at Fountain. Plaintiff relates that Soma costs more than other medications, but his cramps and pain have not been helped by other medications.

The pill call nurses, however, have told Plaintiff that his medication has not arrived.  Plaintiff makes an unconnected, bald statement: "awaiting P.H.S. to approve this medication ordered by prison Dr. Barns."

Plaintiff's present request for Soma is associated with two surgeries on his right foot.  (Docs. 1 & 46).  Briefly, the original complaint (Doc. 1) was filed after Plaintiff had surgery in Birmingham to repair a calcaneus (heel) fracture in his right foot, which entailed joining the bones with screws, wires, and plates.  Shortly thereafter, Plaintiff was transferred to Fountain, where he is under the care of Defendant Dr. Barnes. (*Id.*).  Subsequent to his transfer, Plaintiff was seen by an orthopedic specialist at the North Baldwin Infirmary, Dr. Fletcher.  However, Plaintiff complained about missing follow-up appointments with Dr. Fletcher, being in pain, being unable to put weight on his foot, receiving pain medication that did not

2

alleviate pain and that was crushed before he consumed it, being in segregation because he could not live in population with his condition, and not healing from the surgery.  Plaintiff has continued to complain about these matters throughout the pendency of his action.

    Correctional Defendants and Medical Defendants have filed their Answers and Special Reports.  (Docs. 24, 25, 33, 34, 45). The medical records reflect that Plaintiff has received much medical treatment for his right foot.  Specifically, the records show that Plaintiff had surgery on August 12, 2005, to repair a fracture to the right calcaneus, which was the result of a fall during which he twisted his right ankle.  (Doc. 33, Ex. A, pt. 2, 60, Discharge Summary).  During his hospitalization, his pain was difficult to control due to his prior narcotic use.  (*Id.*).  An x-ray of October 6, 2005, reflected only soft tissue swelling. (*Id.* at 81).  The notes of an office visit with Dr. Chung on November 1, 2005, while Plaintiff was at Kilby Correctional Facility, reflect that Plaintiff complained of pain and had drainage from his heel with swelling in an area one centimeter in length.  (*Id.* at 55).  It was noted: "Given the nature of his injury, it is certainly not unusual for him to have persistent pain in the area.  I think . . . he ought to be allowed to see his operating surgeon for follow-up.  The plate may need to be removed and the wound may need to be debrided."  (*Id.*)

Then, on November 30, 2005, an x-ray revealed that Plaintiff's fracture was "well healed with moderate residual deformity." (*Id.* at 80). Additional findings were made of a spur, moderately severe osteopenia, and a small bunion, but there were no significant findings to be made. (*Id.*).

The record from the January 6, 2006, examination by Dr. Fletcher indicates a healed wound with no evidence of infection but mild swelling and with the fracture and plate/screws appearing in an x-ray to be in good position. (*Id.* at 48). Dr. Fletcher determined that the wound and x-ray looked good with there being no need for hardware removal at that time. (*Id.*). Plaintiff's physical activity and work were restricted for three months and a follow-up visit in 12 weeks was recommended. (*Id.*). A subsequent x-ray on March 8, 2006, reflected that the fracture was well healed and that there was severe osteopenia but no other specific abnormality. (*Id.* at 78). It was noted that "[t]here has been no significant change since the exam of 11-05" and that the changes remain stable. (*Id.*). A comment was added, "If symptoms persist and acute fracture is suspected, follow-up would be recommended." (*Id.*). Then, on May 24, 2006, an x-ray showed that the fracture was well healed, osteopenia was present, and no significant interval changes. (*Id.* at 77). The x-ray report of September 19, 2006, revealed that there were "diffuse osteoporotic change [and] postsurgical changes involving the

calcaneus." (*Id.* at 73). No fracture was seen and the fixation was in place. (*Id.*).

In addition to having these x-rays taken, Plaintiff was seen on numerous occasions at the prison infirmary. On the May 31, 2006, visit, it was noted that his scar tissue had bleeding sites which were suggestive of self-mutilation. (*Id.*, Ex. B, Dr. Barnes' Affidavit). On September 11, 2006, and February 23, 2007, blood was again noted as being present. (*Id.*). Plaintiff disputed the self-mutilation. (*Id.*, Ex. A, pt. 1 at 3). Plaintiff was treated for pain at different times with Vicodin, Tylenol, Percogesic, Darvocet, Motrin, Lortab, Percocet, Feldene, and Indocin. *See generally* Doc. 33, Ex. A.

On February 28, 2007, an x-ray was taken revealing "a moderate deformity of the calcaneus secondary to an old fracture," which was well healed; there were additional findings of a spur, osteopenia, slight osteoarthritic changes, and a small bunion. (Doc. 46, Ex. B, at 5). Referral was made to Dr. Fletcher for consideration of hardware removal. (*Id.* at 11-12). On April 27, 2007, Dr. Fletcher found scar sensitivity over the prior incision with tenderness at the "peroneal sheath consistent with scar entrapment" along with hardware impingement and a neuroma. (Doc. 58, Appx. at 2). The hardware was surgically removed on June 20, 2007, at the North Baldwin Infirmary. (*Id.* at 3). Plaintiff was prescribed Lortab 10 for pain and was

transferred to the prison infirmary. (Doc. 46, Ex. B, at 18). He was given Vicodin for pain, and he returned to see Dr. Fletcher on June 22, 2007. (*Id.* at 18 & 21). The wound looked good to Dr. Fletcher, the wound was dressed, and Plaintiff was given an orthopedic boot and was to return in 10 days for removal of sutures. (Doc. 58, Appx. at 2). Dr. Fletcher next saw Plaintiff on August 10, 2007, and found the wound looking good and Plaintiff reporting a "marked reduction in lateral calcaneal pain since our removal & decompression." (*Id.* at 3).

II. <u>Discussion</u>.

In order for Plaintiff to prevail on a request for a preliminary injunctive relief, he must show:

> (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to public interest. "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites."

*Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985). It is mandatory that the movant convince the Court that *all* four factors are satisfied. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) (finding that a preliminary injunction was properly denied where movant failed to established

one factor because movant bore burden of persuasion on each of the four factors); *United States v. Lambert,* 695 F.2d 536, 540 (11th Cir. 1983) (same).

Injunctive relief will not issue unless the complained of conduct is imminent and no other relief or compensation is available. *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir. 1987); *Sullivan v. Division of Elections*, 718 F.2d 363, 365 (11th Cir. 1983). Further, a temporary restraining order or a preliminary injunction is a drastic remedy used primarily for maintaining the *status quo* of the parties. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1981); *Cate v. Oldham,* 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).

In the present Motion, Plaintiff must establish that he will suffer an irreparable injury if injunctive relief does not issue. Plaintiff does not identify any injury that he will suffer if he is not awarded injunctive relief at this time. Even though the Court will liberally construed his allegations, the Court cannot rewrite his Motion or assume what his injury is. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (reaffirming that *pro se* pleadings must be held to less exacting standards than formal pleadings drafted by lawyers); *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (ruling that it is not the court's duty to assist a *pro se* litigant by

rewriting a deficient complaint or acting as a *de facto* attorney).  Moreover, Plaintiff does not clearly advise whether he is presently receiving pain medication.  That is, Plaintiff states that he agreed to try Soma "in place of having to use the narcotic pain medication Vicodin."  (Doc. 59).  Therefore, if Plaintiff is receiving pain medication regularly or just when he needs it, he will not be able to meet his burden of establishing irreparable injury.  Furthermore, there is evidence that since the surgery on June 20, 2007, Plaintiff reported a marked reduction in pain, which will likewise diminish his ability to establish an irreparable injury.  (Doc. 58, Appx. at 3).  The undersigned, therefore, concludes that Plaintiff has failed to meet his burden in regard to the element that he will suffer irreparable harm if injunctive relief does not issue.

Because Plaintiff has not satisfied one element, the Court will not discuss the other elements for the purpose of entering a ruling on Plaintiff's motion.  *Jefferson County*, 720 F.2d at 1519 (finding that a preliminary injunction was properly denied where movant failed to meet the burden of persuasion on one factor).  However, the Court does note that it is highly doubtful that Plaintiff would be able to satisfy another element - there is a substantial likelihood that he will ultimately prevail on the merits.

To be brief, Plaintiff initially alleges in his Complaint

that he has been denied medical treatment. (Doc. 1). Then, in the Complaint's attachment he recounts the treatment that he has received. This inconsistency in pleading leads the Court to conclude that Plaintiff is disputing the medical treatment that he is receiving. "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.) (quotation omitted), *cert. denied,* 475 U.S. 1096 (1986). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976). Rather, for a constitutional violation to occur in a medical setting, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Allegations of negligence and malpractice are not consistent with a finding of deliberate indifference. *Id.* at n.14.

A review of the medical records in this action reflect that Plaintiff has been given much medical attention and treatment in the Alabama prison system and by "free-world" doctors. Thus, Plaintiff's burden to establish a deliberate indifference will be a difficult one to meet in order to be successful on his Complaint as amended. Consequently, it cannot be said that there

9

is a substantial likelihood that Plaintiff will be successful on the merits of his claim.

Apart from the substantive aspect of Plaintiff's claims, Medical Defendants have raised the defense of failure to exhaust administrative remedies, which may preclude a disposition on the substantive claims.  *See* Doc. 33, at 4 n.1, at 7-9, at Ex. C; 42 U.S.C. § 1997e(e).  This defense is realizable and is able to negate Plaintiff's claims against Medical Defendants.

Having spent time reviewing the records and pleadings in order to address Plaintiff's Motion, the undersigned concludes that Plaintiff's efforts would be better spent in addressing the substantive aspects of his action and ensuring that they are properly before the Court, instead of filing numerous collateral pleadings with the Court.  This is particularly so at this time when Plaintiff has received the surgeries and treatment for his condition.

III.  Conclusion.

In the Motion Plaintiff did not identified the elements required for injunctive relief, nor has he discussed them. Because Plaintiff failed to meet his burden on one element, Plaintiff is not due to have injunctive relief granted. *Jefferson County, supra*.  Accordingly, it is recommended that Plaintiff's Motion (Doc. 59) be denied.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the

11

fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 2nd day of October, 2007.

>  s/BERT W. MILLING, JR.
>  UNITED STATES MAGISTRATE JUDGE